C. R. JONES, Guardian, Appellee, v. ETTA CLYMAN et al., Appellees; EDNA CLYMAN et al., Appellants.

**PROCESS: Substituted Service—Acceptance by Superintendent of Asylum.** A showing to the effect that a notice of application to sell real estate of an incompetent under guardianship, with copy of petition attached, was sent to the superintendent of the hospital where the incompetent was confined, and that there was an acceptance of service of the *notice* by the superintendent, without any specific mention of the petition, carries the presumption that the copy of the petition was served along with the notice. (Sec. 3207, Code, 1897.)

**GUARDIAN AND WARD: Sales and Conveyances—Belated Appointment of Guardian Ad Litem.** In proceedings for the sale of the real estate of an incompetent under guardianship, failure to appoint a guardian *ad litem* until some time after entering upon the trial is, at the most, only an irregularity.

**WILLS: Construction—Nature of Estate Created—Devise During Widowhood.** A devise to a widow so long as she remains the widow of testator carries a life estate, subject to divestment upon the remarriage of the widow; and this rule is not changed by the fact that the testator failed to devise the remainder.

**REMAINDERS: Intestate Remainder.** An intestate remainder vests in the heirs of testator instantly upon the death of the testator.

**WILLS: Life Tenant With Power to Sell—Insanity.** Power in a life tenant, under a devise of real estate, to sell for designated purposes

passes, in case the life tenant becomes insane, to the court and the duly authorized guardian.

*Appeal from Davis District Court.*—SENECA CORNELL, Judge.

## JUNE 23, 1922.

PROCEEDING by guardian for authority to sell real estate. Order and decree as prayed, and the defendants Edna Clyman and Joda Clyman appeal.—*Affirmed.*

*W. B. Hays* and *Buell McCash,* for appellants.

*Payne & Goodson* and *E. Rominger,* for appellees.

WEAVER, J.—On May 2, 1902, Joseph H. Clyman, a resident of Davis County, Iowa, died testate, survived by Etta Clyman, his wife, and Zetta Clyman, Edna Clyman, and Joda Clyman, his children and only heirs at law. The principal and controlling provision of his will, which was duly probated, is in words as follows:

"I give and bequeath to my beloved wife Etta Clyman, full and absolute control of all my property both real and personal, to have and to use, and sell and convey and make conveyance of for her own use and that of my children so long as she may remain my widow. But in case she fails to remain my widow, I will that the property all be kept together until the youngest child is of age when my wife Etta Clyman may take her dower interest in the property and the remainder of the property to be divided equally among my children then living. And I hereby appoint my wife, Etta Clyman executor of my will and guardian of my children and she need not be required to give bond."

After the death of the testator, his eldest daughter, Zetta, married one Lowell Hill; and thereafter, and before the bringing of this action, said daughter died intestate, without issue, and survived by her said husband. Though not so stated in the record, it is apparent that the widow of the testator elected to take under the provisions of the will; for it is shown that she

assumed possession of the entire estate, and was in full control and management thereof for several years, when she was adjudged insane, and committed to the state hospital, where she has since remained. On January 23, 1920, C. R. Jones, being the duly appointed guardian of said insane person, began this proceeding by filing in the court below a petition describing the situation of the property and estate, alleging that the real estate was not of a kind or quality to rent to advantage, and that the income therefrom was insufficient to pay the necessary charges and expenses thereon and leave enough to meet the needs for the keeping of the ward and support and education of the children; and for these reasons he asked authority to sell the lands and invest the proceeds in interest-bearing securities. Petitioner also asked the court for a construction of the will, clearly defining its terms and the nature and extent of the rights and interests of the several persons entitled to benefits under said devise. Notice of such proceeding, with copy of the petition attached, was sent the superintendent of the hospital where the widow was being restrained, and his certificate of service was indorsed upon said notice and returned to the court below.

At this time, the daughter Edna had arrived at her majority, but Joda was still a minor, and appeared by her guardian. These daughters were represented by the same counsel, and appear to have acted together throughout the proceedings. Answering the petition, they allege that, under the terms of the will, they are severally entitled to receive from the estate their support and the necessary expenses of their education; that they have, in fact, received only limited and insufficient benefits from the guardian in charge of the estate; and that each will require materially increased allowances to meet their necessary present needs, and additional and increased amounts with which to maintain themselves in school and college. It is their theory that, under the will, they each own a one-third part of the estate; and they aver that, in case the property be sold, they will be entitled to receive that proportion of the proceeds; and they resist the granting of authority to sell the land, except upon terms providing them a reasonable allowance from the

proceeds of such sale, with which to pay their debts and continue their course through school and college.

Lowell Hill also appears to the proceeding, and avers that, as the surviving husband of Zetta, deceased, he is entitled to a two-ninths interest of the estate of Joseph H. Clyman, subject only to the prior right and interest of the plaintiff's ward, Etta Clyman.

On the hearing below, the trial court construed the will as follows: First. It devises to his widow, Etta Clyman, a life estate during her widowhood, with power to sell and convey the property for the use of herself and children. Second. It provides that, in case of the widow's remarriage, the property shall be "kept together" until the majority of the youngest child, when the widow takes one third of the estate, and the remainder becomes the property of the children then living. Third. The will does not make any provision for a devise of the remainder over after the death of the life tenant, and such interest in the estate is, therefore, to be regarded and treated as intestate property. Further elaborating its views in this respect, the court said:

"I think the statement 'but in case she fails to remain my widow,' in the second paragraph of the will, means the same as though it read, 'But in case she remarries.' In other words, I am of the opinion that, should the widow die without having remarried, the will should be construed as if the clause 'but in case she fails to remain my widow, I will that the property all be kept together until the youngest child is of age, when my wife, Etta Clyman, may take her dower interest in the property and the remainder of the property to be divided equally among my children then living,' had not been inserted in the will. It is my opinion that the title to the real estate owned by Joseph Clyman at the time of his death vested in the children of said deceased who were living at that time, subject to the use of the widow during her lifetime, and subject to sale by the widow or her guardian for the purpose mentioned in the will; subject, also, to be divested in the event of the remarriage of the widow. It is also my opinion that the 67 acres afterwards purchased by the widow is held by her in trust for the same heirs, subject

to the same conditions as the real estate of which the deceased died seized. It would, therefore, follow that the defendant Lowell Hill would have the interest in such real estate as the law gives the husband of the deceased daughter of Joseph H. Clyman, possession of such interest to be deferred until the death of Etta Clyman, and subject to be divested entirely in the event of the remarriage of said Etta Clyman. I find that all of said real estate should be sold, as prayed for in the petition of the plaintiff, and direct that the plaintiff give a bond in double the amount of the purchase price of the land, with securities to be affirmed by the court. Out of the proceeds of the sales of said real estate belonging to the estate of Joseph H. Clyman, and that held in trust for such estate, the guardian should pay the costs in this case, the support of his ward, Etta Clyman, and the necessary support and education of the minor child, Joda Clyman, until she becomes 18 years of age. Also, $100 attorney fees to W. B. Hays and $50 attorney fees to Buell McCash, being their fees in this case. The balance of the proceeds of the sale of all of said real estate should be kept by said guardian and loaned by him on good security until the death of his ward, or until her disability is removed. The guardian should keep a separate account of the funds derived from the sale of the undivided one half of the land belonging to his ward and the proceeds of the land belonging to the estate of Joseph H. Clyman. The daughters of Joseph H. Clyman ask for an allowance, to enable them to take a course in college and to pay a debt incurred by Edna. I do not think the funds of the estate can be used for the support of the children after they have attained their majority, and the application therefor is denied, except to the minor until she reaches her majority.''

Before entering judgment in accordance with these views, question seems to have arisen upon the propriety and necessity of having the plaintiff's ward represented by a guardian *ad litem*. Objection appears also to have been raised as to the sufficiency of the service of notice upon said ward to give the court jurisdiction to enter an order for the sale of the property. The court held the service sufficient, and thereupon, over the objection of the appellants, appointed E. Rominger, Esq.,

guardian *ad litem* for the ward. Mr. Rominger then appeared
in that capacity, and filed an answer denying the plaintiff's
petition, and demanding strict proof of its allegations. There-
after, the court entered its final order or judgment in substan-
tial accord with the views it had previously expressed as to the
construction of the will, and granting the prayer for an order
authorizing a sale of the property. From this order and decree,
an appeal to this court has been taken by and in behalf of the
two daughters of the testator, Edna and Joda. There is no
appeal by the plaintiff, or by the guardian *ad litem,* or by
Lowell Hill. The twelve assignments of error advanced by the
appellants may be combined and considered under the following
heads:

I. The objection raised to the sufficiency of the notice
upon the plaintiff's ward. This objection is based upon the
statutory provision that a notice in such cases shall be served
upon the ward, together with a copy of the peti-

1. PROCESS: sub- tion asking for the order of sale. Code Sections
stituted service:
acceptance by 3207, 3223. The record appears to show that a
superintendent
of asylum. notice in due form, with a copy of the petition
attached, was sent to the superintendent of the hospital for the
insane where the said Etta Clyman was being detained, and that
said superintendent, acting under the authority of the statute,
Code Section 3525, indorsed thereon his acknowledgment of its
service, and returned it to the trial court. Said certificate is
in words as follows:

"Jan. 24th, 1920. Mt. Pleasant, Iowa.

"I, C. F. Applegate, superintendent of the above named
hospital hereby certify that Etta Clyman is under my care and
treatment in said hospital as an insane person; that in my opin-
ion personal service of the attached notice would affect her in-
juriously, and I therefore in accordance with the provisions of
Section 3525 of the Code of 1897 hereby acknowledge service of
the same in behalf of said patient, this the 24th day of January,
1920.

"Witness my hand and seal of hospital.

"C. F. Applegate, Superintendent.

" [Seal.] "

The objection thereto is that it speaks of the "attached notice," without any express mention of the copy of the petition. In our judgment, the trial court did not err in holding this service sufficient. We think it shows substantial compliance with the statute.

II. Neither does any reversible error appear in the matter of appointing a guardian *ad litem*. Conceding, for the purposes of the case, that, in regular and orderly procedure, such appointment ought to have been made before entering upon the trial, failure so to do does not necessarily deprive the court of its jurisdiction, nor constitute material error. *Wickersham v. Timmons*, 49 Iowa 267; *Webster v. Page*, 54 Iowa 461; *Rice v. Bolton*, 126 Iowa 654, 658; *In re Will of Wiltsey*, 135 Iowa 430, 433; *Muenkel v. Muenkel*, 143 Minn. 29 (173 N. W. 184, 187). There is no showing of prejudice to the appellants, resulting from the delay in the appointment of the guardian *ad litem*. The objection that Mr. Rominger was incompetent to act as guardian *ad litem* because he was then representing the interest of Lowell Hill is without merit. Such employment could in no manner adversely affect the rights or interests of the appellant.

2. GUARDIAN AND WARD: sales and conveyances: belated appointment of guardian *ad litem*.

III. Objection is made to the holding that, under the will, the ward, Etta Clyman, took a life estate only, it being the contention of appellants that the widow became vested with a fee, either absolute or defeasible; and that, such being the case, the daughter Zetta acquired no interest, unless it be a contingent remainder in the estate of her father; and that her death extinguished such remainder, and her surviving husband is, therefore, not entitled to any share or interest in such estate.

3. WILLS: construction: nature of estate created: devise during widowhood.

That a devise to the widow of a testator, to continue so long as she remains his widow, vests her with a life estate (subject, of course, to its extinguishment by another marriage) is too thoroughly and definitely settled to justify the taking of time for a discussion of the authorities. See, for example, *Price v. Ewell*, 169 Iowa 206; *Brunk v. Brunk*, 157 Iowa 51; *Convey v. Murphy*, 154 Iowa 421; *Archer v. Barnes*, 149 Iowa 658; *Podaril v. Clark*, 118 Iowa 264; *In re Estate of Proctor*, 95 Iowa

172; *In re Estate of Beaty,* 172 Iowa 714. We find nothing in
this will to except it from the operation of the general rule to
which we have adverted. Appellants argue that the will makes
no provision disposing of the remainder over after the life
estate, and that this is an indication of the intent of the testator
to devise the fee to his wife. Were this the only circumstance
explanatory of the intent of the deceased, the argument would
not be without force, but to adopt that construction would ren-
der void and meaningless much of the language of the instru-
ment. It uses no words of devise or gift of the property itself,
to the widow. What it gives to her is the ''control'' of the prop-
erty, the right to ''have and to use.'' it and to sell and convey
it ''for her own use and that of his children,'' so long as she
''remains his widow.'' The further provision relating to what
shall be done with the property in event of the widow's remar-
riage is of no effect so long as she remains his widow. If that
condition never occurs (as it probably will not), the rights of
the parties in the testator's estate will be precisely what they
would have been had the clause respecting the effect of the
widow's remarriage been entirely omitted from the will. If the
provision for the benefit of the widow is construed as a devise
for life, as we think it must be, then there was necessarily left
in the estate a remainder over, and the undevised
4. REMAINDERS: remainder vested, by operation of law, in the
intestate re-
mainder. three children who survived the testator.

That clause of the will directing the disposition of the prop-
erty in case of the widow's remarriage is, as already suggested,
wholly inoperative until the contingency so provided for occurs.
It follows of necessity that the daughters (including Zetta, since
deceased) each became vested with a one-third interest in the
remainder, subject to be divested by sale of the property under
the power or authority given by the will, or by order of court.

It is argued for the appellants that the authority to sell
was personal in the widow, and that it is, therefore, not com-
petent for the court to authorize a sale by her guardian. Mani-
festly, the objection is unsound. It was the
5. WILLS: life ten- clear intent of the deceased to subject his
ant with power
to sell: insanity. estate, in the first instance, to the support and

maintenance of his wife and children, and to that end he added to the widow's life estate a liberal power and discretion to sell and dispose of the property for that purpose; and when the widow became insane, and incompetent to exercise that power in her own behalf, it cannot be doubted that the court, through a properly qualified guardian, proceeding in the manner prescribed by statute, could and should direct such disposition of the property as would best accomplish the testator's expressed purpose.

Without prolonging this opinion for further discussion, we hold that the court properly construed the will, and that there was no error in granting the order to sell.

As to the other provisions of the final order or decree entered by the trial court, and not herein specifically mentioned or discussed, no error is assigned or argued by counsel. Since we find no sufficient ground for a reversal, the judgment appealed from is—*Affirmed.*

STEVENS, C. J., EVANS, PRESTON, FAVILLE, and DE GRAFF, JJ., concur.